Jan. 15. 2020 10:24AM

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Nicole Travers;<br>    Plaintiff;<br><br>v.<br><br>Service Employees International Union,<br>    Local 1199<br>       Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

NOW COMES, the Plaintiff, Nicole Travers, by and through undersigned counsel, and hereby brings this Verified Complaint and Demand for a Jury Trial against the Defendant, Service Employees International Union, Local 1199. ("Defendant" or "Union") as follows:

## PARTIES

1. Plaintiffs Nicole Travers ("Ms. Travers") is an individual who resides New Hampshire.

2. Defendant is a Labor Organization with an address at 108 Myrtle Street 4th Floor Quincy, MA, 02171 that is the exclusive representative of certain employees including Plaintiff while Plaintiff was employed at Cambridge Health Alliance a business location is 230 Highland Avenue, Somerville, MA. 02143

3. Plaintiff and Defendant were parties to a collective bargaining agreement effective through and extending beyond March 17, 2016.

No. 9209 P. 2

## JURISDICTION AND VENUE

4. This action involves a union and a member of that union, which is a question of federal law.

5. The claims asserted in this action are between parties who reside in different states, and that the amount in question exceed $75,000.00

## GENERAL ALLEGATIONS

Plaintiff alleges that Defendant has committed an unfair labor practice of the Employee Collective Bargaining Agreement. The following is a clear and concise statement of the facts involved in each alleged violation, followed by a specific reference to the section and subsection of the law allegedly violated.

5. Plaintiff hereby incorporates by reference paragraphs 1 through 5, inclusive, of all facts of the Complaint.

6. On or about November 8, 1991, Ms. Travers commenced her employment with CHA in a cafeteria cashier position earning approximately fifteen thousand ($15,000.00) dollars per year.

7. During Ms. Travers' tenure with CHA, she paid for and became a member of the Local 1199 Union.

2

8.  As part of her membership in the Union, Plaintiff was part of a contact that guaranteed her certain rights as a Union member including representation in disciplinary actions and terminating matters by the Union, in addition to the union filing grievances on her behalf.

9.  Despite Ms. Travers' long-standing dedication and hard work, Ms. Travers has been subjected to adverse employment actions including but not limited to numerous instances of disparate treatment. Following which, the Union failed to properly investigate a grievance, process a grievance, or to arbitrate a grievance.

10. Ms. Travers' was terminated effectuated on March 17, 2016, while still on a leave of absence pursuant to FMLA, was a violation of the FMLA because of her requests for a leave of absence pursuant to FMLA and the need for anticipated reasonable accommodations for Ms. Travers' physical impairments.

11. As a preface to the current situation it should be noted that in or around November 2014, Ms. Travers was involved in a serious automobile accident. Subsequently, Ms. Travers was diagnosed with a full-thickness rotator cuff tear, biceps tenosynovitis, intra-articular synovitis and sub acromial impingement.

12  The Union was well-aware of the Plaintiff's medical condition and her reason for being out of work.

13. The Union was well-aware of its obligations under the CBA to protect its employee members.

14. It should be noted that, Ms. Travers was in the process of obtaining a divorce from her husband, Mr. Travers, who is also an employee of CHA in an Emergency Room Technician position, and the Union was aware of the adverse and hostile nature of their relationship.

15. It should be further noted that during said divorce, Ms. Travers obtained a restraining order against her husband, a copy of which was provided to CHA and the Union.

16. In the restraining order, clause #5 specifically states that "both parties are employed at CHA, Everett, MA. The defendant [Mr. Travers] is permitted to go to his place of employment but shall not have any contact with the Plaintiff [Ms. Travers]. He shall not disparage the Plaintiff to anyone at his place of employment."

17. On or about January 19, 2016, Ms. Travers was examined at Massachusetts General Hospital and was advised that she needed surgery since non-operative therapy sessions were unsuccessful.

18. After surgery, Ms. Travers needed to treat with pain management and rehabilitation.

19. As a result, Ms. Travers sought a medical leave of absence pursuant to FMLA for ninety (90) days by submission of the Certification of Health Care Provider Employee's Serious Health Condition Form. Ms. Travers informed the Union of this matter as well as CHA human resource department.

20. In the FMLA documentation completed and signed by, Matthew Provencher, M.D., ("Dr. Provencher"), Ms. Travers' physician, it was disclosed that Ms. Travers was unable to perform certain job functions due to the condition requiring the leave of absence pursuant to FMLA.

21. The FMLA documentation indicated that Ms. Travers would not be able to perform any overhead activities or have any active range of motion with her upper arm and shoulder.

22. The documentation described the non-operative treatment Ms. Travers received over the prior two (2) years, including physical therapy sessions, pain medication, etc.

23. The FMLA documentation specifically indicated that Ms. Travers would be unable to return to work for a period of twelve (12) weeks, and indicated that upon her return, she would require reasonable accommodations to allow her to treat with physical therapy for a period of twelve (12) weeks to eight (8) months.

24. On or about March 15, 2016, Ms. Travers presented at her physician's office to be evaluated for a return to work date and was provided with a medical release note to return to work on April 5, 2016 without any medical restrictions, notwithstanding the requests made on the original FMLA paperwork.

25. Upon information and belief, Mr. Travers chose to cease working at CHA due to the restraining Order, and was seeking a way to eliminate Ms. Travers position in order for him to return, notwithstanding the fact that the Court Order allowed him to continue his employment with CHA.

26. It should be noted that in or about March 2016, Mr. Travers obtained a copy of a New Hampshire Court Order relative to a criminal proceeding involving Ms. Travers which was completely unrelated to Ms. Travers' employment with CHA. Included in said court documentation was an Order of Probation, which limited Ms. Travers' ability to travel beyond the state lines of New Hampshire, without special permission from Ms. Travers' Probation Officer or a Court Order.

27. It should also be noted, that these types of restrictions are routinely modified to allow travel to work in Massachusetts, and would likely not have posed a problem in Ms. Travers' continuation of employment with CHA.

28. Notwithstanding that fact, Mr. Travers in an attempt to unduly harass his wife, and violate the restraining order, went out of his way to obtain said Court Order and provide it to CHA.

29. Mr. Travers further fraudulently suggested to CHA that Ms. Travers did not need to have the surgical procedure and that the only reason she requested FMLA was due to the Criminal case against her. This statement was a clear violation of clause #5, and CHA was very well aware of this fact.

30. Upon receipt and review of the Probation Order, CHA determined that it could use the Probation Order to eliminate Ms. Travers' position because CHA viewed Ms. Travers' physical impairments as a liability.

31. CHA further took Mr. Travers fraudulent representations at face value and either failed or refused to investigate said claims on their own, despite having in their possession all of Ms. Travers medical records relative to the FMLA, sign by medical professionals and documenting a two (2) year history of recovery from the automobile accident.

32. Subsequently, CHA scheduled a meeting to discuss these false allegations with Ms. Travers on or about March 17, 2016, and subsequently terminated her employment while she was still on an active leave of absence pursuant to FMLA.

33. The Union was put on notice by CHA of this decision and the Union either failed or refused to take part in the termination meeting.

34. The Union after speaking with Ms. Travers failed or refused to file an official protest of her termination, failed to file a grievance of her termination and failed to assert any rights Ms. Travers had pursuant to the CBA.

Jan. 15. 2020 10:26AM   No. 9209   P. 7

35. As a direct and proximate result of the Union's breach of its contractual duties to Ms. Travers, she suffered both financial and emotional damages.

## COUNT I

### Breach of Contact

36. Plaintiff hereby incorporates by reference paragraphs 1 through 35, inclusive, of all facts of the Complaint.

37. As a party to the CBA, the Union had a duty to protect Plaintiff from disciplinary actions of CHA that were not warranted. In addition, the Union had a duty to oppose any termination of Ms. Travers and file grievances to reverse any such decision.

38. The union had knowledge of the adverse decisions of CHA and of CHA's reliance on Mr. Travers' statements.

39. Upon information and belief, due to Mr. Travers' status as a union member as well, the Union made the decision to not involve itself in the termination matter of the Plaintiff and did not inform Ms. Travers of its decision.

40. Due to the Unions duties under the CBA and its either failure or refusal to take part in any defense, it breached its obligations to Ms. Travers

41. As a direct and proximate result of the aforementioned breach of its duties, the Union has caused Ms. Travers to incur damages and not have the ability to save her job or at least to assert her rights under the CBA.

42. Due to the termination and the Union's failure to assert her CBA rights, Ms. Travers suffered severe financial loss and emotional distress damages which have resulted in her need to incur medical expenses.

## COUNT II

### Detrimental Reliance (promissory estoppel)

43. Plaintiff repeats and incorporates by reference the allegations in paragraphs 1-42 as if set forth fully herein.

44. Through its marketing to induce employees to join and pay membership dues to the Union, the Union made a clear and unambiguous promise to plaintiff that she would be provided protection against unlawful terminations and improper and unjust disciplinary actions by CHA.

45. Plaintiff reasonably and justifiably relied on said promises and put her trust in the Union that it would fulfill its promises. As such, believed that the Union would work to stop or at least fight her termination while she was on FMLA and due to Mr. Travers' lies to the company.

46. The Union did not perform its promise to provide a defense and rather it simply allowed Ms. Travers to be terminated in violation of the CBA.

47. Ms. Travers' reliance on the Union's promises was a substantial factor in causing her harm as alleged herein.

### **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs, hereby demands judgment against the Defendants as follows:

(A) For damages in favor of Plaintiff in an amount to be determined at trial;
(B) For pre-judgment interest on any recovery by Plaintiff;

(C) For expenses of suit herewith;
(D) For reasonable attorney's fees; and
(E) For such other relief as the Court may deem just and proper.

## JURY DEMAND

THE PLAINTIFF RESPECTFULLY DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE.

### DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury on all issues raised which are so triable.

Respectfully submitted,

_____
Nicole Travers

By her attorney,

/s/ Michael Goldstein, Esquire
Michael Goldstein, Esquire (BBO# 665880)

Email: M.Goldstein@goldsteinandclegglaw.com
Law Office of Goldstein and Clegg, LLC
1500 Executive Park
Burlington, MA. 01803
Telephone: 781-595-3800

Dated: 01/14/20